**FIRST NATIONAL BANK OF SOUTHWESTERN OHIO, Exr., Appellee,**

v.

**MIAMI UNIVERSITY et al., Appellees; Havighurst et al., Appellants.**

[Cite as *First Natl. Bank of Southwestern Ohio v.
Miami Univ.* (1997), 121 Ohio App.3d 170.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

Nos. CA96–03–047, CA96–03–048.

Decided June 2, 1997.

**172**

*James Robinson,* for appellee.

*James E. Michael,* for appellee Miami University.

*Betty D. Montgomery*, Attorney General, and *Cheryl R. Hacker*, Assistant Attorney General, for appellee Betty D. Montgomery.

*Armin Frank*, for appellants.

---

*Per Curiam.*

Defendants-appellants, Alan W. Havighurst and Douglas A. Havighurst, have taken the instant appeals from the entry of a declaratory judgment favorable to plaintiff-appellee, First National Bank of Southwestern Ohio ("FNB"), in its capacity as the executor for the estate of Walter E. Havighurst.[1] Appellants present on appeal three assignments of error, in which they challenge the balance struck by the probate court in weighing the evidence before it, the denial of their demands for a jury trial, and various evidentiary rulings. Finding no merit to any aspect of the challenges advanced on appeal, we affirm the judgment of the court below.

The parties' dispute centers on a charitable trust created by the last will and testament of FNB's decedent, Walter E. Havighurst ("testator"). The testator executed the will creating the trust on September 7, 1988, and amended it by a codicil dated October 11, 1989. The testator died on February 3, 1994, and, on February 11 of the same year, the will was admitted to probate.

The will made specific bequests of money and/or property to the testator's heirs, including the appellants, and to Miami University, where the testator had served as a professor until his retirement. The will then bequeathed the balance of the testator's estate to FNB, in trust, and directed that it "be used * * * to promote and fund educational projects through the Miami University International Center * * * for building cross-cultural understanding between the peoples of the United States of America and the Union of Soviet Socialist Republics."

On October 20, 1994, FNB, as executor of the testator's estate, filed an action in the Probate Division of the Butler County Court of Common Pleas, seeking declaratory relief regarding the viability of the trust in the wake of the December 1991 dissolution of the USSR. Specifically, FNB sought declarations that the trust created no reversionary interest in the testator's heirs; that the will creating the trust authorized FNB, as trustee, to fund "programs related to the [USSR] as it previously existed * * * [and] programs related to the people and institutions previously or currently located within the areas formerly occupied by the [USSR]"; and that the trust was to be funded and executed according to its terms.

---

1. These appeals have been consolidated for purposes of briefing, argument, and disposition.

Appellants each responded to FNB's complaint with an answer and a counterclaim for declaratory relief. In their counterclaims, as subsequently amended, appellants sought declarations that the political, economic and social conditions of the USSR at the time that the will was executed differed significantly from the conditions at the time that the complaint was filed; that the trust cannot be carried out in accordance with its terms; that Miami University's conduct and its status as an instrumentality of the state of Ohio precludes the preservation of the trust under any equitable doctrine; that the proposed gift by trust has thus failed; and that the residuary estate thus constitutes intestate property that must pass pursuant to R.C. 2105.06, the statute of descent and distribution. Douglas Havighurst, in his counterclaim, additionally and in the alternative sought the implementation of a plan that would require the participation of the testator's heirs and would promote "conflict management[;] * * * the reduction of tribal, racial, and ethnic aggression; and [the] management of nuclear materials."

The matter was tried to the probate court, and on December 15, 1995, the court entered its opinion and judgment entry of declaratory judgment, in which it construed the will to preserve the trust. On February 20, 1996, the court, upon appellants' motions, issued its amended entry of declaratory judgment and findings of fact and conclusions of law, and these appeals ensued.

## I

■ In their first assignment of error, appellants contend that the probate court erred in declining to declare that the testator's attempted gift in trust had failed and, upon such declaration, to distribute the trust assets to the heirs at law, when the dissolution of the USSR necessitated the termination of the trust. Appellants thus, in effect, assail the dismissal of their amended counterclaims and, in essence, challenge the balance struck by the probate court in weighing the evidence adduced at trial. We find no merit to this challenge.

■ A probate court, in a declaratory judgment action, is authorized to construe a will and to declare the rights and legal relations of persons interested in the administration of an estate or a trust. See R.C. 2101.24(A)(1)(k), 2721.03 and 2721.05(C). The court below, in its amended entry of declaratory judgment, declared that the trust created by the testator's will was a charitable trust and that the will created no reversionary interest in the testator's heirs. The court construed the will's use of the term "Union of Soviet Socialist Republics" to also mean the "former Union of Soviet Socialist Republics" and construed the will's use of the term "Soviet Union" to also mean the "former Soviet Union." Finally, the court ordered that the trust be "fully funded and carried out in accordance with its terms."

We note at the outset that, in the opinion accompanying the initial entry of declaratory judgment, entered on December 15, 1995, the probate court, having construed the terms "Union of Soviet Socialist Republics" and "Soviet Union" to preserve the trust, concluded that its application of the doctrines of *cy pres* and deviation would have yielded the same result. The court's amended entry of declaratory judgment and its findings of fact and conclusions of law, entered on February 20, 1996, superseded the court's December 1995 opinion and entry of judgment, yet manifested the purpose expressed by the court in its superseded opinion to construe the will to uphold the trust without resort to the doctrines of *cy pres* or deviation. We agree that any discussion of the doctrines would be superfluous. Therefore, we do not reach those aspects of appellants' challenge on appeal that are predicated upon the probate court's alleged misapplication of the doctrines.

Turning then to the merits of appellants' first assignment of error, we note that a court's sole purpose in construing a will is to ascertain and effectuate the intention of the testator. The court must discern the testator's intention from the language of the will. *Carr v. Stradley* (1977), 52 Ohio St.2d 220, 6 O.O.3d 469, 371 N.E.2d 540, paragraph one of the syllabus; *Townsend's Exrs. v. Townsend* (1874), 25 Ohio St. 477, paragraphs one and two of the syllabus. However, when the language of the will creates doubt as to its meaning, the court may consider extrinsic evidence to aid in its determination of the testator's intention. *Oliver v. Bank One, Dayton, N.A.* (1991), 60 Ohio St.3d 32, 573 N.E.2d 55, paragraph one of the syllabus (following *Sandy v. Mouhot* [1982], 1 Ohio St.3d 143, 145, 1 OBR 178, 180, 438 N.E.2d 117, 118).

The court below preserved the trust by construing the terms "Union of Soviet Socialist Republics" and "Soviet Union" to also mean the "former Union of Soviet Socialist Republics" and the "former Soviet Union." The court's construction of these terms was based upon its conclusions that the testator's "primary purpose" in creating the trust was "educational"; that "[t]he testator intended the terms 'Union of Soviet Socialist Republics,' 'Soviet Union,' and 'Soviet' to primary be [*sic*] descriptive of the 'peoples' that inhabited that area of the world"; and that the testator did not intend that the continued existence of the USSR as a "political entity" be an "integral factor in * * * the creation and administration of the [trust]." These conclusions were, in turn, based upon the court's reading of the text of the will creating the trust and upon testimony adduced at trial that the word "peoples," as used in the will, could be construed to mean the "ethnic * * *, cultural * * *, linguistic, [and] religious communities" within a "geographical area."

Appellants' counterclaims were predicated upon the assertion that the testator's aim in creating the trust was to ease Cold War tensions between the United

States and the USSR and that, with the demise of the USSR and the concomitant end of the nuclear threat that was the Cold War's most salient feature, the trust has failed in its essential purpose. As we noted above, the probate court found the language of the will and the evidence adduced at trial to bespeak a purpose on the part of the testator in creating the trust that was educational rather than political, and more personal than institutional. Furthermore, the evidence was uncontroverted that the region still possesses a nuclear capacity that, with the demise of the USSR as a political entity and the consequent destabilization of the region, continues to pose a threat to the United States.

The Ohio Supreme Court in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Our review of the record of the proceedings below discloses that the probate court had before it competent and credible evidence to support its entry of declaratory judgment preserving the trust and its dismissal of appellants' counterclaims. We, therefore, overrule appellants' first assignment of error.

## II

In their second assignment of error, appellants challenge the denial of their demands for a jury trial. This challenge is equally untenable.

The Seventh Amendment to the United States Constitution secures the right to a jury trial in a civil action. This guarantee is not, however, applicable to the states. *Minneapolis & St. Louis RR. Co. v. Bombolis* (1916), 241 U.S. 211, 217, 36 S.Ct. 595, 596, 60 L.Ed. 961, 963; *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 662, 590 N.E.2d 737, 742, fn. 1. Section 5, Article I of the Ohio Constitution similarly preserves "inviolate" the right to a jury trial in a civil action. The right has been judicially limited, however, to those causes of action to which the right adhered that were recognized at common law prior to the adoption of the state constitution. *Id.* at 661, 590 N.E.2d at 741–742; *Pokorny v. Internatl. Hod Carriers, Bldg. & Common Laborers Union* (1974), 38 Ohio St.2d 177, 180, 67 O.O.2d 195, 196, 311 N.E.2d 866, 869.

The right to a jury trial may also be extended by statute. R.C. 2721.10 governs the determination of issues of fact in a declaratory judgment action and provides that "such issue[s] may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." R.C. 2101.31, which governs the determination of issues of fact in proceedings before a probate court, provides that "[a]ll questions

of fact shall be determined by the probate judge, unless he orders them tried by a jury * * *."

 Appellants endorsed upon their answers and counterclaims demands for a jury trial. The probate court, upon FNB's motion and following a hearing on the matter, exercised the discretion conferred by R.C. 2101.31 and denied appellants' jury demands.

Appellants contend that the probate court's denial of their demands for a jury trial constituted an error of law and an abuse of discretion. We disagree.

## A

The Ohio Supreme Court in *Renee v. Sanders* (1953), 160 Ohio St. 279, 52 O.O. 175, 116 N.E.2d 420, addressed the issue of whether a litigant in a declaratory judgment action instituted in a probate court possesses a constitutional or statutory right to a jury trial. The court held that the Ohio Constitution does not preserve the right to a jury trial in a declaratory judgment action, because such an action did not exist at common law prior to the adoption of the constitution. *Id.*, paragraph three of the syllabus. The court further held that the Revised Code confers no absolute statutory right to a jury determination of factual issues arising in a declaratory judgment action in probate court. *Id.*, paragraph three of the syllabus. The court thus concluded that if the subject matter of a declaratory judgment action is within the jurisdiction of the probate court, R.C. 2101.31 (former G.C. 10501–32) governs the trial of the issues, and the determination of whether factual issues will be tried to a jury is committed to the sound discretion of the probate court. *Id.*, paragraph five of the syllabus; accord *Giurbino v. Giurbino* (1993), 89 Ohio App.3d 646, 626 N.E.2d 1017; *Bobko v. Sagen* (1989), 61 Ohio App.3d 397, 572 N.E.2d 823.

R.C. 2101.24(A)(1)(j) and (k) grant the probate court exclusive jurisdiction "[t]o construe wills" and "[t]o render declaratory judgments." R.C. 2101.24(B)(1)(b) grants the probate court jurisdiction, concurrent with the general division of the common pleas court, "to hear and determine * * * [a]ny action that involves * * * a charitable trust."

In its complaint, FNB invoked the jurisdiction conferred upon the probate court by R.C. 2101.24 and sought declaratory relief involving the charitable trust created by the testator's will. Appellants' counterclaims sought contrary declaratory relief regarding the trust. R.C. 2101.31, therefore, controlled the proceedings at trial and vested the probate court with the discretion to determine whether the factual issues presented in the complaint and the counterclaims would be tried to a jury.

We perceive the relief sought in FNB's complaint and appellants' counterclaims to be predominantly equitable in nature. See *Gearhart v. Richardson* (1924), 109 Ohio St. 418, 142 N.E. 890, paragraph one of the syllabus (holding that an action construing a will creating a trust is equitable in nature); accord *Sessions v. Skelton* (1955), 163 Ohio St. 409, 56 O.O. 370, 127 N.E.2d 378, paragraph seven of the syllabus. Therefore, we cannot say that the probate court's denial of appellants' demands for a jury trial on the factual issues thereby presented constituted an abuse of its discretion.

## B

Our analysis of appellants' alternative challenge to the denial of their jury demands proceeds from the R.C. 2721.10 requirement that issues of fact in a declaratory judgment action be tried "in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." R.C. 2311.04, which governs the proceedings in the general division of the common pleas court, provides:

"Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury * * *.

"All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury * * *."

Thus, the determination of whether factual issues in a declaratory judgment action will be tried to a jury, while purely a matter of discretion in the probate court, may be a matter of right in the general division of the common pleas court.

Appellants assert that this statutory scheme creates an irrational legislative distinction, in violation of the equal protection guarantees of Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution. This challenge fails in its central premise.

We note at the outset that the Ohio Supreme Court in its decision in *Renee, supra*, 160 Ohio St. 279, 52 O.O. 175, 116 N.E.2d 420, acknowledged the potential conflict between R.C. 2101.31 and 2311.04, without confronting the equal protection implications. The court noted that the two sections have coexisted since 1853, found no statement in the Revised Code to suggest that R.C. 2311.04 supersedes or overrides R.C. 2101.31, and held that a determination that R.C. 2311.04 mandated a jury trial would effectively nullify R.C. 2101.31. *Id.* at 284–285, 52 O.O. at 177, 116 N.E.2d at 423–424. Having set forth these considerations and held that R.C. 2101.31 vests in the probate court the discretion to determine whether factual issues would be tried to a jury, the court declared its holding to be "entirely consistent with the provisions of [R.C. 2721.10] and * * * not [in]

conflict with the provisions of [R.C. 2311.04]." *Id.* at 286, 52 O.O. at 178, 116 N.E.2d at 424.

The constitutionally secured guarantee of equal protection under the law " 'implies that all litigants similarly situated may appeal to courts for both relief and defense under like conditions, with like protection, and without discrimination.' " *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 288, 595 N.E.2d 862, 866, quoting *Sexton v. Barry* (C.A.6, 1956), 233 F.2d 220, 224. When, as here, a legislative classification implicates neither a fundamental right nor a suspect class, the classification is invalid only if it bears no rational relationship to a legitimate governmental objective. *Adkins v. McFaul* (1996), 76 Ohio St.3d 350, 351, 667 N.E.2d 1171, 1173. See, also, *McGowan v. Maryland* (1961), 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (holding that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived of to justify it").[2]

As we noted above, the probate division and the general division of the common pleas court have concurrent jurisdiction to hear and determine an action involving a charitable trust. R.C. 2101.24(B)(1)(b). FNB, therefore, could have instituted and maintained its declaratory judgment action in either the probate division or the general division of the common pleas court.

Once FNB chose to proceed in probate court, appellants' options were limited. As between courts of concurrent jurisdiction, the court that first acquires jurisdiction over the parties has exclusive jurisdiction to adjudicate the matter. *Kane v. Kane* (1946), 146 Ohio St. 686, 33 O.O. 166, 67 N.E.2d 783, syllabus; accord *State ex rel. Largent v. Fisher* (1989), 43 Ohio St.3d 160, 162, 540 N.E.2d 239, 240 (citing *Miller v. Court of Common Pleas* [1944], 143 Ohio St. 68, 70, 28 O.O. 19, 20, 54 N.E.2d 130, 131). Appellants' counterclaims were compulsory, see Civ.R. 13(A), and being second in time to FNB's claims, they could be asserted only as counterclaims to the complaint filed by FNB in the probate court.

Appellants' equal protection challenge is thus premised upon their contention that had FNB instituted its declaratory judgment action in the general division, rather than the probate division of the common pleas court, R.C. 2311.04, rather than 2101.31, would have governed the proceedings at trial and would have mandated that the factual issues be tried to a jury. We are not persuaded, however, that R.C. 2311.04 would have conferred upon appellants a right to a jury trial on the factual issues presented in the complaint and in their counterclaims.

---

**2.** State and federal law provide essentially the same standard for assessing an equal protection violation. *Adkins v. McFaul* (1996), 76 Ohio St.3d 350, 351, 667 N.E.2d 1171, 1173.

As we noted above, R.C. 2721.10 and 2311.04 mandate a jury trial of factual issues arising in a declaratory judgment action instituted in the general division of the common pleas court if the action is construed to be "for the recovery of money only, or specific real or personal property." The right to a jury trial thereby conferred depends upon the nature and character of the relief sought. *Erie Ins. Group v. Fisher* (1984), 15 Ohio St.3d 380, 382, 15 OBR 497, 498–499, 474 N.E.2d 320, 322–323; *Gunsaullus v. Pettit* (1888), 46 Ohio St. 27, 29, 17 N.E. 231, 231–232.

When the relief sought is equitable, R.C. 2311.04 confers no right to a jury trial. *Erie Ins. Group, supra,* 15 Ohio St.3d at 382, 15 OBR at 498–499, 474 N.E.2d at 322; *City Loan & Sav. Co. v. Howard* (1984), 16 Ohio App.3d 185, 186, 16 OBR 195, 197, 475 N.E.2d 154, 156. When the pleadings seek a mixture of legal and equitable relief, the right to a jury trial depends upon the action's primary and predominant objective. See, *e.g., Murello Constr. Co. v. Citizens Home Sav. Co.* (1985), 29 Ohio App.3d 333, 334, 29 OBR 461, 461–462, 505 N.E.2d 637, 638 (holding that a jury trial was not required when the money demand, although specific, was "incidental and ancillary" to the equitable relief requested and would ripen only if equitable relief were granted); *Huntington Natl. Bank v. Heritage Invest. Group* (1983), 12 Ohio App.3d 113, 114, 12 OBR 420, 421, 467 N.E.2d 564, 566 (holding that R.C. 2311.04 confers a right to a jury trial on a legal counterclaim that, if true, would extinguish the original equitable claim, but confers no right on a legal counterclaim that is "incidental or ancillary" to the original claim).[3]

In its complaint, FNB sought declaratory relief involving the charitable trust created by the testator's will. Appellants, in their counterclaims, sought contrary declaratory relief regarding the trust, including a declaration that the proposed gift by trust has failed and that the residuary estate thus constitutes intestate property that must pass pursuant to the statute of descent and distribution.

The factual issues thereby presented cannot be said to have arisen in an action "for the recovery of money only, or specific real * * * property." Nor are we persuaded that appellants' counterclaims transformed the action into one "for the

---

3. This principle may be seen as a logical extension of the Ohio Supreme Court's decisions in *Nordin v. Coulton* (1943), 142 Ohio St. 277, 27 O.O. 219, 51 N.E.2d 717, and *Ireland v. Cheney* (1935), 129 Ohio St. 527, 2 O.O. 523, 196 N.E. 267. The court held in *Nordin,* paragraph two of the syllabus, that an action is equitable if the right to equitable relief must be determined before legal redress can be granted, but is "at law" if the "primary or paramount" relief sought is legal and the equitable redress is merely incidental. The court held in *Ireland,* paragraph two of the syllabus, that when the "principal, primary and paramount relief sought * * * is equitable, the cause is one in chancery notwithstanding the fact that * * * incidental thereto the court is compelled to find what amount, if any, is due and owing to the person seeking the relief."

recovery of * * * personal property." Even if we were to so characterize appellants' counterclaims, based upon their prayer for a declaration requiring the intestate distribution of the property, such relief would merely be incidental to the declaratory relief sought and would ripen only upon the entry of declaratory relief favorable to appellants. See *Murello Constr. Co., supra*, 29 Ohio App.3d at 334, 29 OBR at 461–462, 505 N.E.2d at 638.

We conclude, instead, that the relief sought was primarily and predominantly equitable. See *Gearhart, supra*, 109 Ohio St. 418, 142 N.E. 890, paragraph one of the syllabus (holding that an action construing a will creating a trust is equitable in nature); accord *Sessions, supra*, 163 Ohio St. 409, 56 O.O. 370, 127 N.E.2d 378, paragraph seven of the syllabus. Therefore, R.C. 2311.04 would not have conferred upon appellants a right to a jury trial.

In the absence of such a right, the challenged statutory scheme does not, with respect to appellants, create the legislative distinction upon which their equal protection argument rests. We, therefore, hold that the probate court's exercise of the discretion conferred by R.C. 2101.31 to deny appellants' demands for a jury trial did not violate their constitutionally secured rights to equal protection under the law.[4]

Having thus determined that the probate court's denial of appellants' demands for a jury trial constituted neither an error of law nor an abuse of discretion, we overrule the second assignment of error.

### III

In their third and final assignment of error, appellants challenge the probate court's exclusion of evidence relevant to the testator's intention in establishing the trust and to the issue of whether the trust had failed in its purpose. We find no merit to any aspect of this challenge.

### A

As we noted above, the probate court preserved the trust by construing the terms "Union of Soviet Socialist Republics" and "Soviet Union" to also mean the "former Union of Soviet Socialist Republics" and the "former Soviet Union." This construction was based, in part, upon testimony by a witness for FNB that the word "peoples," as used in the will, could be construed to mean the "ethnic * * *, cultural * * *, linguistic, [and] religious communities" within a "geographical area." Appellants contend that the probate court precluded them from

---

4. Appellants lack standing to mount a third-party equal protection challenge to this legislative scheme. See *Cincinnati v. Thompson* (1994), 96 Ohio App.3d 7, 26, 643 N.E.2d 1157, 1170, fn. 8.

demonstrating that the proposed "change [in] nomenclature" would effect a substantive change in the provisions of the trust, when the court sustained FNB's objection to defense counsel's attempt to elicit testimony, upon cross-examination of the witness, that the trust "is impractical and in fact impossible to carry * * * out as written."

The question posed by defense counsel, in essence, sought expert opinion testimony on the dispositive issue posed by appellants' counterclaims, *i.e.*, whether the trust had failed in its essential purpose. Evid.R. 702 and 704 permit expert opinion testimony that embraces the ultimate issue to be decided by the trier of fact if (1) the witness is qualified as an expert "by knowledge, skill, experience, training or education"; and (2) "scientific, technical, or other specialized knowledge" will assist the trier of fact to understand the evidence or to decide an issue of fact.

The witness from whom the excluded testimony was sought was qualified as an expert on "international affairs," not the law. He, therefore, did not possess the qualifications to render an expert opinion on the legal effect of a "change [in] nomenclature" on the trust. Alternatively, the probate court might well have concluded that whatever specialized knowledge the witness did possess would have been of no assistance to the court, as the trier of fact, in resolving the issue before it. We, therefore, find no error in the court's exclusion of this testimony.

### B

Appellants also sought, without success, to introduce into evidence a will that the testator allegedly executed in 1987 to show the testator's intention in executing the 1988 will creating the trust. As we noted above, a court, in construing a will, may look beyond the language of the will and consider extrinsic evidence to aid in its determination of the testator's intention when the language of the will creates doubt as to its meaning. *Oliver*, 60 Ohio St.3d 32, 573 N.E.2d 55, paragraph one of the syllabus. The decision as to whether and to what extent such extrinsic evidence will be considered in determining the testator's intent is thus committed to the sound discretion of the trial court. We cannot say that the probate court's refusal to consider such evidence in this instance constituted an abuse of discretion.

### C

Finally, the probate court sustained FNB's objection to defense counsel's attempt to elicit, on cross-examination of FNB's international affairs expert,

testimony as to whether, at the time that the will creating the trust was executed, "the mind that wrote [the will] and understood and signed it could * * * possibly have been thinking the same [as] we are thinking today." We perceive no error in the court's exclusion of this testimony.

The witness clearly lacked the requisite firsthand knowledge to offer testimony or to express a lay opinion as to the testator's "thinking" in executing the will creating the trust. See Evid.R. 602 and 701. The court, again, might reasonably have excluded expert opinion testimony to that effect, either on the ground that the witness was not qualified to express an expert opinion on the matter or on the basis that expert opinion testimony would not have been helpful to the court's resolution of the issue. See Evid.R. 702. Furthermore, we cannot say that the court's refusal to consider such extrinsic evidence relevant to the testator's intention constituted an abuse of discretion.

Finding no merit in any of appellants' evidentiary challenges, we overrule the third assignment of error.

Having thus considered and found wanting each of appellants' three assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

SHANNON, P.J., DOAN and GORMAN, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

RUPERT A. DOAN, J., of the First Appellate District, sitting by assignment.

ROBERT H. GORMAN, J., of the First Appellate District, sitting by assignment.